(34 South. 448.)

No. 14,548.

FRANKLIN v. SEWALL.

In re SEWALL.[*]

(March 30, 1903.)

SALE—MORTGAGE—EVIDENCE—AUTHENTIC ACT.

As Relates to the Facts.

1. The seller signed the sale, which she sues to have changed to a mortgage. She swore that, in signing the sale, she intended for it to be a mortgage.

The buyer swore that there was no such agreement.

No written testimony shows that it was not a sale, and the testimony admitted over objection is neither direct nor conclusive.

The fact that there was no actual delivery of the property, and that the buyer said that he would not put her out of house and home, would not justify changing the character of the act from a sale to a mortgage.

As Relates to Law.

2. "An authentic act makes full proof against the parties." Civ. Code, art. 2236.

3. In the absence of written evidence, and in the absence of interrogatories on facts and articles, or proof of error or fraud (with only contradictory testimony), the court will not hold that the act is a mortgage, although on its face

it is an absolute sale. An authentic deed cannot be entirely changed without evidence more certain and direct than that offered by plaintiff, and contradicted, as it is, by defendant's testimony.

4. The stability of title requires that an act shall remain unchanged, unless it be evidenced that downright fraud or error has been committed.

(Syllabus by the Court.)

Action by Nancy Franklin against John A. Sewall. Judgment for defendant was reversed by the Court of Appeal, and defendant applies for certiorari or writ of review. Judgment of district court reinstated.

Shepherd & Land, for applicant. David Thompson Land, for respondent.

BREAUX, J. Plaintiff brought this suit before the district court of Caddo parish for a judgment decreeing that an act of sale from her to defendant, Sewall, of date January 5, 1899, is an act of mortgage; and she asks to have it canceled and erased from the records on her paying to Mr. Sewall, the defendant, the debt and interest in the deed, as the price.

### Statement of the Case.

Plaintiff, after setting up her claim to the land in dispute, avers that she is an ignorant colored woman, unable to read or write, and that she borrowed from the defendant $150, and intended to secure the payment of same by mortgaging the above property to said Sewall, but, through error and ignorance of her rights, instead of granting a mortgage on said property, she signed what purports to be an act of sale to said Sewall of said property, for $175 cash, although it was not her intention to sell, but to mortgage, the property.

Plaintiff says that, after she borrowed the amount from defendant, with a portion of it she built on the lots claimed to have been bought by defendant two small houses, and that about July 1, 1899, she turned over these two houses to defendant, and requested him to collect rent thereon, and to credit same on the money she had borrowed. She alleged that she had always retained possession of the property; that this property, at the date of the deed she assails as not a sale, was worth largely in excess of $175, the

asserted purchase price. It appears that the property was worth about $600.

Testimony for plaintiff as to error is to the effect: That plaintiff is an old colored woman, who cannot sign her name. That she borrowed $150 from defendant for one year at 10 per cent. interest. That the deed was not read to her. That she did not think that the clerk read the deed to her. That he just said, "Touch the pen." The deed was already written up, and the defendant carried them in, and said, "Take the pen," and they touched the pen. No witnesses to the sale were present. That she did not have the deed read, because she was depending on defendant. That she previously had bought property.

Defendant, on the other hand, as a witness, swore that the deed was read to plaintiff by the clerk before whom it was passed, and that there was no agreement or understanding that it was to be anything but a sale. Mr. Leonard, the clerk, testified that the deed was in his handwriting, and was passed in presence of two witnesses, and that it was always his custom to explain the contents of deeds when they were not read in full.

Defendant, in his answer to plaintiff's petition, denies plaintiff's allegations, and avers that he purchased the property outright.

The husband of plaintiff, by whom she was authorized to contract, died since the deed was executed.

The judge of the district court wrote an elaborate opinion, and dismissed plaintiff's suit, with costs, reserving her legal rights to bring an action of lesion according to law.

As the questions in dispute were carefully considered by the judge of the district court, and afterward, on appeal, by the Court of Appeal, reversing the lower court, we will insert here a synopsis of the opinion of each tribunal. The judge of the district court said in his opinion:

That the act of sale is authentic in form; that he admitted parol testimony to show fraud or error; that error as to the nature of the contract will render it void. Here the district court propounds the question whether the evidence shows error sufficient to invalidate the contract, or change its nature. The court a qua summarized the testimony of each of the parties, which is in the main as be-

fore stated, and afterward said that it is not pretended. or alleged that there was any artifice or deception practiced on plaintiff to induce the belief that the instrument was an act of mortgage; that, if she did not require the instrument to be read or explained to her, it was an omission for which she had none to blame but herself.

The court further said: Where a person signs an act without reading it, he cannot avail himself of error resulting therefrom, when the party practiced no fraud (citing Allen, West & Bush v. Whetstone et al., 35 La. Ann. 850), and that a person seeking to avoid a contract on the ground of error must also show improper influence of the other contracting person (Watson v. Bank, 22 La. Ann. 14); that the allegation of error as to the nature of the contract is not shown by the evidence.

The learned judge, after laying down these propositions, took up the question whether parol is admissible to prove that an unconditional sale was intended as a security for the payment of money, and found an answer in the rule that an absolute sale by authentic act cannot be changed or varied by parol evidence.

Said the court in this opinion:

"Plaintiff's counsel argued that parol proof by the witnesses of the price and of the continued possession of the vendor is admissible for the purpose of proving that an absolute sale was intended as a mere security."

After having reviewed the decisions cited by plaintiff's counsel, the court, in answer to counsel's contention, concluded that they related to sales made with the right of redemption in fraudem legis, but that in no case cited by counsel for plaintiff the doctrine announced in the decision applied to absolute sales.

The decisions reviewed are: Parmer v. Mangham et al., 31 La. Ann. 348, which holds, briefly stated, that there was a counter letter in that decision.

Shelly v. Shelly, 36 La. Ann. 100. The contract was shown by interrogatories on facts and articles.

Howe, Ex'r, v. Powell et al., 40 La. Ann. 307, 4 South. 450. It was a redeemable, and not, as in this case, an absolute sale.

In Collins v. Pellerin, 5 La. Ann. 99, there was a counter letter.

In Le Blanc v. Bouchereau, 16 La. Ann. 11, there was a sale, with right of redemption.

The court found it had been uniformly held that the verity and reality of authentic acts of sale can be assailed by the parties thereto only in two ways, viz., by means of a counter letter, secured, or by the answer of the other party to the interrogatories on facts and articles; citing Godwin v. Neustadtl, 42 La. Ann. 738, 7 South. 744; State v. Robertson, 45 La. Ann. 954, 13 South. 164, 40 Am. St. Rep. 272.

This doctrine is in conformity with the plain provision of the Civil Code, said the court, with reference to authentic acts and sales of immovables; that, while the Supreme Court seems to have modified the rules of evidence as to redeemable sales, the Code has been strictly adhered to in cases of absolute sales of immovable property; that sales with the pact of redemption can be considered as alienations only when the price is adequate, and possession delivered (Howe, Ex'r, v. Powell et al., 40 La. Ann. 309, 4 South. 450); that in most redeemable sales the purchaser is a mere money lender, the sale is made to secure the loan, and when the price is inadequate the law looks upon the transaction with suspicion.

That while in absolute sales the law declares that the authentic act is full proof of the agreement contained in it against the contracting parties, unless it be declared and proved a forgery, the acknowledgment of payment made therein cannot be contested (Civ. Code, arts. 2236, 2237), and that, in sales of immovables, parol evidence shall not be admitted against or beyond what is contained in the acts. Plaintiff seeks to show by parol that the agreement was not to sell, but to mortgage, and that she did not receive the sum of money mentioned in the act, but a less amount. Brooks v. Wortman, 22 La. Ann. 492. Again the court said: "An authentic act cannot be assailed in this manner. Plaintiff's whole case hinges on proof of the alleged error, viz., that she intended to mortgage the property, but was induced by defendant to sign an act of sale, not knowing the nature of the contents of the instrument."

That the evidence fails to show such a state of facts. Plaintiff's testimony is contradicted by that of defendant as to what the nature of their agreement was, and as to what passed before the notary; also by the testi-

mony of the notary that he always explains to the parties the contents of acts, when they are not read.

That such an allegation of error as that made by plaintiff must be supported by clear proof of mistake superinduced by the fraud of the other party.

The court states, where the form of a contract of sale is given to a mortgage between the parties to the conveyance, the real nature of the conveyance must be established by counter letter. Frost v. Bebout, 14 La. 108.

That the example given in Civ. Code, art. 1841, of error, has no application, said the court, to written contract; that fraud is not alleged; and that, if plaintiff sold the property for less than half its value at the date of the contract, she has still a plain and adequate remedy by action of lesion.

When the case came up before the Court of Appeal for decision, that learned court was equally as industrious in consulting decisions, and was as emphatic in support of a contrary view.

Our esteemed Brother Judge Porter, as organ of that court, said, in substance, that plaintiff had not consented to a sale, and hence the contract ought not to stand as a sale. The court reviewed the decisions cited by the district court, and expressed views different from that court regarding two of the decisions cited by the former. The court also reviewed the facts, and found them favorable to plaintiff's contention, to a greater degree than found by the judge of the district court. They said that she, and not defendant, paid the taxes for the year preceding the date of sale; that defendant, some time after the deed had been signed, said to plaintiff not to be concerned that she would not be turned out of home. These and other facts are construed as showing that plaintiff still retained a right in the property.

Passing to the question more particularly of law discussed, we find that the court held that, in courts of law and equity blended, the degree of negligence, as relates to signing deeds without properly understanding them, gives rise to issues which the court must determine in each case from the circumstances, having regard for the condition and relations of parties.

The court said that which is well known that in view of the simplemindedness and credulity of old negroes, and their implicit reliance upon the "white folks" in matters of this kind, they were not prepared to hold that plaintiff's failure to have the deed read to her and explained before signing it was, under the circumstances, such gross negligence as to justify a court of justice in refusing to right an error of which she is the victim. The Civil Code, art. 1841, provides that error as to the nature of the contract will render it void. We have been unable, after a most careful search, to find a single case in which our Supreme Court has considered or interpreted this article. We fully realize, said the court, the binding force and effect of solemn written agreement, and agree with the learned judge of the lower court that they ought not to be set aside, except for the weightiest reasons, but we think that the present case comes well within this rule. Even, if we were less certain of our position, we should in this case follow the rule laid down in Theriot v. Chaudoir, 17 La. 447, wherein the court set aside a contract for error of fact, and said:

"In such a case, when doubtful, the court will decide in favor of him seeking to avoid a loss, against him seeking to gain."

Judge Pugh, of the Court of Appeal, handed down a carefully prepared concurring opinion.

We have abbreviated the views as above, and inserted them in our statement of the case, because they set forth the issues in all their bearings. The attention given by our learned Brothers to the questions involved manifest their great desire to do justice between the parties.

### Opinion.

There can be no question that if the deed was not an absolute conveyance of the title, and defendant accepted it as security and a mortgage, the one who grants can, in equity, prove the fact by parol.

Here the deed is an absolute conveyance of title upon the face of the papers. Can we, in the absence of an allegation and proof of fraud or error, a counter letter, or interrogatories on facts and articles, go behind the face of the deed, and set it aside upon the conflicting testimony which we have reviewed, and of which we have made a summary?

We do not think that the view for which

plaintiff contends finds support in the different articles of our Civil Code, which seem to us directed against the admissibility of parol testimony to affect title to immovable property. The fundamental rule is that title to real property can neither be destroyed nor created by parol, and cannot be thereby affected, except under proper allegation and proof.

The decisions are that a sale à rémeré for an insignificant price will not hold as a sale after the time to redeem has passed, but that it is to be considered as a mortgage. This is the extent to which the ruling has gone, and no further, in the absence of the condition to which we have referred; that is, arising because of error or fraud, or because of the agreement between the parties, or the decisory oath of the asserted buyer.

True, the price was less than half the value of the property, but it was not insignificant.

The right which is to be implied is not, as we understand, to be defeated post litem in the manner that plaintiff intimated, or, rather, suggested.

True, also, that plaintiff remained in possession; but that, of itself, does not change the nature of the act, if it was an absolute conveyance.

True, one of the witnesses (Johnson) swore that defendant said (quoting from his testimony):

"If I am not mistaken, then Mr. Sewall [the defendant] came to me, and said that he had a mortgage on the property, or a bill of sale, or something. I don't remember what."

This is not testimony upon which to hold that a deed does not evidence, as it appears, a sale, but that it is a mortgage. It was testimony of a casual utterance long after the sale.

If she built a house on the property, or two houses, or other improvements, she does not lose the right to recover therefor; but that also would not be a fact militating against the sale, as not being, as it appears, a sale. Subsequent conduct or utterances, as here, cannot affect authentic acts.

"Neither should parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." Civ. Code, art. 2276.

"The authentic act is full proof of the agreement contained in it against the contracting parties." Civ. Code, art. 2236.

This article was enforced in Godwin v. Neustadtl, 42 La. Ann. 738, 7 South. 744.

A person cannot invoke a want of intention, when she, without inducement or deception of any kind, signed the deed.

But plaintiff calls attention to the article which declares that error as to the nature of the contract will render it void; that is, as we take it, when the two minds do not meet and agree in matter of an unwritten contract. But here a different proposition arises. The seller signed an authentic deed of sale of immovables.

"Parol testimony is not admissible to change title to immovable property." Jones v. Jones, 51 La. Ann. 644, 25 South. 368.

"Parol evidence is not admissible when the contract evidences title to immovables." City of Baltimore v. New Orleans, 45 La. Ann. 526, 12 South. 878.

In Morris v. Terrenoire, 2 La. Ann. 458, the court said:

"The plaintiff charges fraud against the defendant, and fraud can always be proved by parol evidence."

Here we have seen, no fraud is charged.

The property was sold. This is the declaration contained in the deed, which evidences the intention of the parties. This poor plaintiff cannot change the deed from a deliberate sale to a mortgage by testifying that the declaration she signed, and which she consented to, was not her declaration, and did not cover her intention. It was the highest evidence of her intention, which cannot be changed after the deed by declaring that she did not intend to sign the deed she did sign.

It may be a hard case, although it seems to us that she is not, if it be as argued, without remedy, yet we must adhere to a rule which we understand is well settled; otherwise a party to an act would be rendered subject to suits whenever the other party fancied that he had not consented, or that what he intended was not an absolute sale, but a mortgage.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal is avoided, reversed, and annulled.

It is further ordered, adjudged, and de-

creed that the judgment of the district court is reinstated, and it is made the judgment of the Supreme Court; plaintiff and appellee paying costs of this court and of the Court of Appeal.