(67 South. 65)

No. 20892.

BROOKS v. BROUSSARD et al.

(Dec. 14, 1914. Rehearing Denied Jan. 11, 1915.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ⟂18—SALES— REDEMPTION—FAILURE TO EXERCISE.

A sale with the right of redemption becomes absolute, if such right is not exercised within the time agreed on by the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. ⟂18.]

2. APPEAL AND ERROR ⟂1002 — JUDGMENT — CONFLICTING EVIDENCE — VENDOR AND PURCHASER.

Where the question whether there was a verbal agreement between the vendor and the

vendee at the time of the sale, that the transfer should be considered merely as a security, hinges on their conflicting testimony, a judgment in favor of the vendee will not be disturbed, when his version is corroborated by a counter letter stipulating an *option* in favor of the vendor to repurchase, before a certain date at a higher price.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ☞1002.]

3. VENDOR AND PURCHASER ☞13 — SALES — CONSIDERATION—SUFFICIENCY.

A price which equals at least half the value of the property cannot be considered as vile or insignificant.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 14; Dec. Dig. ☞13.]

4. VENDOR AND PURCHASER ☞101—SALES— TITLE OF PURCHASER—NONPAYMENT OF DEBT ASSUMED—EFFECT.

The nonpayment of a small debt assumed by the vendee cannot affect the vendee's title to the property conveyed, in the absence of any demand for the nullity of the sale for nonpayment of the price.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 170–174; Dec. Dig. ☞101.]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by George Howard Brooks against Homer Broussard and others. From judgment for plaintiff, defendants appeal. Affirmed.

Philip S. Pugh and L. H. Pugh, both of Crowley, for appellants. Smith & Carmouche, of Crowley, for appellee.

LAND, J. This is a suit to eject the defendants from a certain tract of land containing some 233 acres, purchased by plaintiff from Homer Broussard on January 2, 1913. The petition alleged that the consideration, as expressed in the act of sale, was the payment of two mortgages and a judgment, then resting on said property, and aggregating the sum of $5,498.23; that the mortgages contained a waiver of the homestead signed by the wife of said Broussard in favor of any holder of the notes described in the acts of mortgage; that shortly after the said purchase, petitioner executed a counter letter, in which he obligated himself to reconvey the said tract of land to the said Broussard for the price of $6,000 cash; that said contract or option was to expire on November 1, 1913; that the said Broussard did not pay said sum, or any other sum, before or since said date, and that therefore said option has become null.

The petition further represented that under said agreement the right was reserved to said Broussard to reside on the premises during the year 1913, and to cultivate the land free of rent; that the petitioner paid said mortgages and judgment, and also the taxes due on said tract of land for the year 1912; that the said Broussard caused said counter letter to be recorded, and on October 29, 1913, he and his wife made and caused to be recorded an affidavit giving notice that they claimed 160 acres of the tract as a homestead; that the consideration of the act of sale from Broussard to Brooks was not more than $4,000; that said pretended sale was a mere security or pignorative contract, and a counter letter to that effect was to be given to the said Broussard; that the counter letter as executed did not contain the true agreement between the parties; that the value of the property on the date of sale was fully $9,000; that by the failure of Mrs. Broussard to sign the act of sale they were entitled to a homestead; that the pretended sale and counter letter were nothing but a mortgage, and they were entitled to said homestead or to $2,000 out of a forced sale thereof.

Petitioner alleged that the recorded affidavit constituted a cloud on his title, and was without foundation in truth or in fact and, with the counter letter, should be canceled and erased from the records.

Plaintiff prayed for judgment recognizing him as the owner of the tract of land, and

ordering him to be put in possession of the same, and further ordering the cancellation and erasure of the said counter letter and affidavit.

The answer contains a duplication of the statements of the affidavit, coupled with averments that Broussard was an ignorant unlettered man, not conversant with the English language; and that the act of sale was never explained or read to him, but he was told that the same contained all the verbal agreements made between him and Brooks; and that he signed the same by reason thereof; and that as a matter of fact he did not owe the indebtedness assumed by Brooks.

The case was tried, and there was judgment in favor of the plaintiff as prayed for in his petition. The defendants have appealed.

On January 26, 1910, Homer Broussard mortgaged the premises in question to A. C. Lormand to secure a debt of $3,500, represented by three notes of Broussard to his own order and by him indorsed in blank. In the act of mortgage Broussard and his wife waived their homestead rights in favor of Lormand, or any future holder of said notes.

On February 23, 1912, Broussard mortgaged the said premises to G. Howard Brooks to secure a debt of $1,400, represented by the note of Broussard to his own order and by him indorsed in blank. This act of mortgage also contained a similar waiver of homestead rights.

On January 1, 1913, these four notes were due and unpaid, and also a judgment in favor of one Kaplan against Broussard for $165, with interest and costs, less a credit of $50.

On January 2, 1913, Homer Broussard by notarial act sold and delivered to George Howard Brooks the tract of land in controversy, for the consideration of the purchaser obligating and binding himself to pay and cancel the incumbrances then resting on said land, consisting of the mortgages and judgment aforesaid, and the taxes on the property for 1912, aggregating $5,498.-23. The vendor, not knowing how to write, signed the act with his ordinary mark.

In a subsequent act without date, but filed and recorded on May 15, 1913, Brooks bound himself to sell and transfer the same property to Homer Broussard "and no other," and "not subject to transfer under any circumstances whatsoever;" for the price of $6,000 cash, subject to the following condition:

"This option and contract is to expire if the said purchase and payment is not made before November 1st, 1913, after which date the said appearer will be under no obligation to sell the said property to the said Homer Broussard on any terms or conditions whatever."

The act contained a further stipulation as follows:

"Appearer further declares that he is to allow the said Homer Broussard to reside on said place for the year 1913 and cultivate same free of any rent to be paid to the said appearer. This includes only rent as all supplies purchased from appearer by the said Homer Broussard are to be paid for the same as if this contract was not in existence."

[1, 2] The transaction on the face of the acts was a sale, with the privilege or option of repurchasing within a limited period of time, and for a higher price. In a sale with the right of redemption, the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it. Civil Code, 2567. If such right is not exercised within the time agreed on by the vendor, the purchaser's title becomes absolute. Id., 2570. Hence, even considering the transaction as a sale with the right of redemption, a perfect legal title vested in the plaintiff on November 1, 1913.

The purpose of the sale was to provide for the payment of all the incumbrances on the property, and to secure to the vendor a delay of nine months, within which to pay the

sum agreed upon as the price of redemption, and also to secure to the vendor the free use of the premises during the year 1913. Boiled down, the transaction was a transfer of property to pay the debts of the vendor, with a stipulation of the right of redemption. In a similar case this court held that an act ostensibly a sale, the purchase of which was to extinguish a real indebtedness, is not a *mortgage*, but a giving in payment. See Keough v. Meyers & Co., 43 La. Ann. 952, 9 South. 913. In that case, as in this, the vendor remained in possession of the property.

After the sale, the plaintiff mortgaged the property, and with the money thus secured paid the mortgage notes for $3,500. Plaintiff had previously paid the interest on these notes and the taxes. The counter letter was not recorded until after this mortgage debt was paid and canceled.

The Kaplan judgment primed plaintiff's mortgage, and he made an arrangement with Kaplan's attorneys for further time to pay this judgment.

The counter letter was delivered to Broussard, and if he could not read its contents, he had ample opportunity to have it translated and read to him by some person of his own selection.

On October 29, 1913, on the third day before the expiration of the delay fixed for the redemption of the property, Broussard and his wife appeared before a notary public and affixed their marks to a lengthy act, reciting their homestead claim on the premises, and the sale of January 2, 1913, to Brooks for the purpose of securing him "for the debts assumed by him and the amount due him," which, as a matter of fact, were not more than $4,000. The act further recited that at the time said sale was made, it was understood and agreed between the parties that the same was a mere security, whereby the said Brooks was to retain the property as security until he was paid the amount due

136 LA.—13

him; that the said Brooks failed to furnish Broussard with a counter letter of the date of said sale containing the verbal agreements between them, but in February or later the said Brooks delivered to said Broussard an undated promise to sell to him said property on or before November 1, 1913, for the sum of $6,000 cash, said promise to sell, however, not containing the aforesaid verbal agreement between them.

The act further recited "that the said counter letter was recorded by said Broussard on May 15, 1913, in Conveyance Book V 2, pages 148 and 149, of the records of Acadia parish," that the consideration of said pretended sale was vile and inadequate, as the property was worth at the time fully the sum of $9,000, and that the transaction was really a mortgage, and as Mrs. Broussard did not sign the pretended act of sale, they were entitled to a homestead under the law.

The recitals of this act show that Broussard understood the contents of the act of sale of January 2, 1913, and of the subsequent counter letter, and that his sole complaint, as late as October 29, 1913, was that a certain verbal agreement between him and Brooks had not been incorporated in the counter letter. In the face of the recitals of the act of October 29, 1913, the plea that Broussard did not understand the contents of said act of sale and of said counter letter is not worthy of consideration. His testimony as to the verbal agreement is contradicted by Brooks, who is corroborated by the counter letter, which was received, held, and recorded by Broussard without objection or protest.

The judge below evidently gave credit to the testimony of the plaintiff, and we see no good reasons for disturbing his finding. See Franklin v. Sewall, 110 La. 292, 34 South. 448.

[3] The parties in dealing with the property did not fix its sale value at more than

$6,000, and if, as averred by defendant, it was worth $9,000, it sold for nearly two-thirds of its value. In the Franklin Case (110 La. 299, 34 South. 451) the court said:

"True, the price was less than half the value of the property, but it was not insignificant."

[4] We are satisfied from the evidence that the act of sale and the counter letter represented the true contract and agreement between the parties, and that the plaintiff, as a legal consequence of the failure of Broussard to redeem, became the absolute owner of the property. Whatever homestead rights may have remained in Broussard and wife, after their waivers supra, were extinguished by the sale to Brooks. If the debts which Brooks assumed to pay were less than the amount expressed in the act of sale, he may be accountable to Broussard for the difference. If Brooks has not paid the Kaplan judgment, he and his property are bound, and the defendant has not been injured. In other words, the fact that the plaintiff may not have fully paid the price of the sale does not affect his title. No demand for the nullity of the sale for nonpayment of the price is before the court, nor could such a demand be urged without a restitutio in integrum.

Judgment affirmed.