HEARD, Judge.
Plaintiff, Del Cryer, instituted this suit against the defendant, M & M Manufacturing Company, Inc. to collect royalties and attorney’s fees under a written contract entered into between plaintiff and defendant.
It was established by the evidence that plaintiff, Del Cryer, acquired ownership of the Jet-Glo Multi Purpose Heater in a judgment against Pioneer Manufacturing Company. He retained the services of Green Research Engineering Company for testing and improving the heater for orchard heating purposes. After testing and making minor improvements, George J. Green, Jr., owner of Green Research & Engineering Company, rendered his report which stated that the maximum burning rate of the heater using commercial kerosene was 275,000 BTUs per hour suitable for heating for outdoor laborers, preventing vegetables and fruits from freezing and protecting newly poured concrete. It could be safely refueled in operation, was explosion proof and well-suited for orchard and tender vegetable protection. In his report Green stated that the tests were extended over two 24 hour periods.
*70 Cryer took the report and endeavored to find a manufacturer for the heater. He made contact with Thayer T. May of the M & M Manufacturing Company, Inc. around the third of July, 1965, giving him the heater and the Green report. He stated he wished May to test the heater and to do anything that he wanted to in connection with his testing. May took the heater and report with him to south Louisiana and Florida to get fruit and vegetable growers’ reaction to the marketability of the heater. On August 17, 1965 Cryer and M & M Manufacturing Company, Inc. entered into a written contract whereby Cryer sold to M & M the following:
“All and the entire manufacturing rights, distribution rights, production rights and all rights of whatsoever kind and nature necessary for the manufacture and sale of the Jet-Glo Multi Purpose Heater, said heater being a multi purpose heater burning low cost kerosene designed for use by nurserymen, orchard growers, poultrymen, sportsmen, etc., said heater being more fully described in the file of the patent pending number of U. S. Serial Number 326731, it being the intention of DEL CRYER to convey to M & M MANUFACTURING COMPANY, INC., the entire and exclusive manufacturing and production rights and distribution rights throughout all of the States of the United States and any part of the world, together with any and all rights to any improvements, changes, alterations, etc., made to said heater, whether patent applied for or not, DEL CRYER transferring herein all manufacturing, production and other rights acquired by him from Johnny Maniscal-co and D. O. Furr, Sr., in a contract between the said parties executed pursuant to option dated July 9, 1965, in connection wtih said heater.
“The entire stock of parts and dies and inventory for the production of the above referred to heater, said inventory having been acquired by DEL CRYER at Sheriff’s Sale in Suit Number 168,-309, entitled Del Cryer versus Pioneer Manufacturing Company, Inc., and being more particularly described therein, said inventory being located at 151 Ute Trail, Shreveport, Caddo Parish, Louisiana.”
The consideration given by M & M was $12,500 and a royalty of $1.25 per unit on each unit manufactured, M & M binding itself to manufacture a minimum of 5,000 units in the first year of production. M & M thereafter took the parts to the heater and initiated steps in its manufacture. During the period before manufacturing operations actually began, problems with soot buildup within the heater developed. The heater was found to burn at high temperatures for three or four hours when a soot buildup would begin that reduced the burning capacity to minimal levels. M & M made extensive efforts over several months to perfect the heater but gave up all efforts considering the heater would be unmarketable.
After a year from the date of contract Cryer made demand for royalties due him under the contract. M & M refused payment and Cryer filed suit October 4, 1966 for $6,250 royalties and $2,000 attorney’s fees. By supplemental petition Cryer alleged that he was entitled to an additional sum of $30,000 royalties for each and every year after the original year under contract. M & M answered, admitting that it had not manufactured the 5,000 units and reconvened for rescission of the contract on the grounds of error of fact and failure of cause and redhibition. M & M also asked for expenses of the sale in the amount of $27,158.22.
The case was tried before Judge Henry F. Turner, who retired before a decision was reached. His successor in office, Judge C. J. Bolin, Jr., found that the heater was defective but reduced the purchase price only and rejected M & M’s demands for expenses of the sale and Cryer’s demands for royalties and attorney’s fees.
*71 M & M has appealed, alleging difficulties in the heater were such that they could not be corrected, and for that reason, reduction of the purchase price to the amount paid was improper, and rescission of the contract and expenses of the sale should be granted. Cryer answered the appeal, alleging the propriety of the rejection of the reconventional demand but asking modification of the judgment to award him the amounts he asked for in his petition.
The primary issues in this case are: first, do the articles on redhibition in our Civil Code apply to this particular sale, and second, if not, was there a misrepresentation as to a material fact so as to warrant rescission of the contract for failure of cause ?
M & M relies on LSA-C.C. Art. 2520 for rescission 'óf sale. This article reads:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
M & M asserts that because of the soot-ing and resulting heat loss the heater is absolutely useless and so imperfect that it would not have purchased the rights had it known of the defect. M & M further asserts that under LSA-C.C. Art. 2521 the defect was not apparent.
The articles cited by M & M and all cases referred to thereunder are based on “a vice and a defect in the thing sold * * * ” Counsel has cited no case nor have we found one for the proposition that rescission of a contract for a redhibitory vice applies to sales of incorporeals. In this case plaintiff, Del Cryer, did not sell a Jet-Glo Multi Purpose Heater but “all of the entire manufacturing rights, distribution rights, production rights and all rights of whatsoever kind and nature necessary for the manufacture and sale of the Jet-Glo Multi Purpose Heater, * * * ” This is not a sale of a thing but the manufacturing, distribution and production rights of the Jet-Glo Heater. LSA-C.C. Art. 2449 provides that incorporeal things may be sold but there is no reference anywhere in the Civil Code that redhibition would apply to any of these incorporeal things. ‘
Although counsel for M & M admits that the basis of the sale in question was the right to manufacture and distribute Jet-Glo Multi Purpose Heaters, it is contended that the heater was the very foundation upon which the sale rested. The defect in the heater rendered the thing sold, the right to manufacture and distribute the heater imperfect for the purpose intended, but the contract is clear that Del Cryer sold the right to manufacture and distribute the heater and that is what M & M acquired. In view of these findings it is our opinion that redhibition does not apply.
The second defense set forth in the defendant’s answer is that the contract should be rescinded because of error of fact and error of cause.
LSA-C.C. Art. 1779 specifies four requisites necessary to the validity of a contract. They are: (1) Parties legally capable of contracting; (2) Their consent legally given; (3) A certain object which forms the matter of agreement, and, (4) A lawful purpose. Consent is defined in Art. 1819 as being the “concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will * * There is no consent where the intent has not been mutually communicated or where it has been produced by error, fraud, violence or threats. In this case since the only allegation is error, it is not necessary to discuss the other three.
Article 1820 provides that there are two types of error: error of fact and error of *72 law. We are concerned only with error of fact. LSA-C.C. Art. 1821 states:
“That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.”
Not every error will invalidate a contract. LSA-C.C. Art. 1823 states that error must be as to the principal cause for making the contract; either as to the motive for making it, the person with whom it is made, or to the subject matter of the contract.
The existence of cause is a condition precedent to a contract. LSA-C.C. Art. 1824 provides that consent would not be given were there no real cause because motive determines the will and if there is no cause or it is falsely represented, there is no valid contract. A person is bound by his will but he cannot be bound without having willed it. 12 La. Law Review 2, 10, J. Denson Smith, A Refresher Course in Cause (1951). To invalidate a contract error must be as to principal cause where there are several. This is called motive, the consideration without which the contract would not have been made. LSA-C.C. Art. 1825. However, no error and motive can invalidate the contract unless the other party was appraised of it as the principal cause of the agreement, or unless from the nature of the contract it can be presumed that he knew it. LSA-C.C. Art. 1826.
In this particular instance we are asked to decide whether the sale of the right to manufacture may be rescinded because of error of fact or failure of cause. To begin with the contract may not be set aside unless the error was in the principal cause of the contract. For M & M’s position to be upheld this court must find that the principal motive or cause of the contract was a heater that would burn for long periods of time at high BTU levels but here again we are hobbled by the previous determination that what was sold was the right to manufacture and distribute. If this was the cause of the contract then M & M got what it paid for.
The jurisprudence is uniform in holding that rescission can only be had if there is error as to principal cause. Calhoun v. Teal, 106 La. 47, 30 So. 288 (1901); Boehmer Sales Agency v. Russo, La.App., 99 So.2d 475 (Orl.La.App.1958); Pan American Production v. Robichaux, 200 La. 666, 8 So.2d 635 (1942); Gibert v. Cook, La.App., 144 So.2d 683 (4th Cir. 1962) and McCarty v. Anderson, La.App., 58 So.2d 255 (1st Cir. 1952). Other cases have stated that principal cause is that without which the parties would not have contracted. Stack v. Irwin, 246 La. 777, 167 So.2d 363 (1964) and National Company, Inc. v. Krider, La.App., 150 So.2d 592 (4th Cir. 1963).
Also if the error is induced by the seller’s misrepresentations then the contract may be rescinded. Overby v. Beach, 220 La. 77, 55 So.2d 873 (1951) and Schmitz v. Peterson, 113 La. 134, 36 So. 915 (1904). However, if the contract is entered into irrespective of the seller’s representations then there is no error. Claiborne Butane Company v. Hackler, La.App., 138 So.2d 234 (2d Cir. 1962); and Housecraft Division of Southern Siding Company v. Tatum, La.App., 130 So.2d 524 (4th Cir. 1961).
Examination of the jurisprudence and legislation reveals that several questions must be answered before rescission can be granted. First, it must be decided that there was error. If error was found then it must be decided if error went to the principal motive of the contract. If misrepresentation is urged the misrepresentation must be to the principal motive of the contract without which the buyer would not have contracted and the buyer must have relied upon the seller’s misrepresentations. In this case there was no misrepresentation present. Cryer did not represent anything but told May to take the heater and do anything he pleased. The only representation that was made was the engineering report and it stated the features in general terms. There is no evidence that the performance *73 of the heater was a condition of the sale. There is no evidence that representations made were more than mere salesmanship. The case of Claiborne Butane Company, Inc. v. Hackler, supra, sheds a great deal of light on the question.
The question which remains unanswered and an obstacle to rescission was the object of the sale. All parties are in agreement that the thing sold was rights to manufacture and distribute. There is no error or misrepresentation regarding rights which were sold. M&M has them and may exercise them as it pleases. We are of the opinion that M&M has presented no grounds for rescission on account of error or fact or error of cause.
As we stated in the beginning, the only defenses presented by defendant was rescission of the contract on the grounds of redhibition and error of fact or error of cause. In view of our findings the defenses contended by defendant must fall. There is no dispute that the contract was entered into by both parties and for the consideration therein set forth.
Plaintiff, Del Cryer, sued for $6,250 royalties for the first year by the terms of the contract. He is entitled to this sum. He also sued for $2,000 attorney’s fees. There is no provision in the contract for attorney’s fees. LSA-C.C. Arts. 1930 and 1934 provide for payment of damages for breach of contract. Art. 1934 states that to entitle plaintiff to attorney’s fees as part of his damages it must be shown that there was bad faith on the part of defendant. Berry v. Ginsburg, La.App., 98 So.2d 548 (2d Cir.1957) and Raney v. Gillen, La.App., 31 So.2d 495 (2d Cir.1947).
It is not shown by the evidence that there is any bad faith on the part of defendant to breach the contract. Therefore, the attorney’s fees are denied. The claim for $30,-000 for future royalties also has no merit.
For the reasons herein set forth, the judgment of the District Court is reversed and there is judgment in favor of the plaintiff, Del Cryer, and against defendant, M&M Manufacturing Company, Inc., in the full sum of $6,250 with legal interest from judicial demand until paid thereon, and for all costs.
The demands in reconvention are denied.